McHugh, J.
I. BACKGROUND
Plaintiffs, ten citizens of the Commonwealth and two organizations, Preserve Appalachian Wilderness Network, Inc. and Walden Forever Wild, Inc., bring this action to challenge the Department of Environmental Management’s (“DEM”) management of the Walden Pond State Reservation (“the Reservation”). Plaintiffs assert four claims against DEM: that DEM has managed the Reservation in ways that violate the statute under which the Reservation was created (Count I); that DEM violated a public trust by mismanaging the Reservation (Count II); that DEM failed to comply with the notice requirements of the Massachusetts Wetlands Protection Act, G.L.c. 131, §40 (Count III); and that DEM failed to file environmental reports required by the Massachusetts Environmental Policy Act, G.L.c. 30, §§61 et seq. (Count IV). Plaintiffs seek declaratory and injunctive relief, attorneys fees, and costs. Defendants now move for summary judgment on all counts pursuant to Mass.R.Civ.P. 56.
II. FACTS
The undisputed facts are as follows. The Walden Pond State Reservation, which consists of Walden Pond and its surrounding woodlands, was established by the Acts of 1922, Chapter 499. Title to the land was given to the Commonwealth but management responsibilities were assigned to the Middlesex County Commissioners. The Commonwealth acquired the Reservation through deeds of gift from the Emerson and Haywood families. The Reservation is registered as a National Historic Landmark and a National Literary Landmark.
By the late 1950s, use of the Reservation had increased dramatically. By then, the County Commissioners had substantially expanded the beach area of *610 the Pond by cutting down trees. Moreover, they had announced plans to build a concrete ramp from a parking area to the beach, to build additional parking spaces and to build a concrete bath house.
Concerned about those plans, a group of taxpayers filed a bill in equity in Superior Court in 1957 to enjoin the Commissioners from proceeding with the plan. The case was heard by a master and the bill was dismissed.
The taxpayers appealed. The Supreme Judicial Court agreed with the taxpayers that, in managing the Pond, the commissioners had “misunderstood the . . . deeds [of gift] and, accordingly, failed to give adequate attention to the donors’ dominant purpose.” Nickols v. Commissioners of Middlesex County, 341 Mass. 13, 26-27 (1960). Although the Court went on to say that the equity proceeding could not be maintained in the absence of intervention by the Attorney General, the Court held that the plaintiffs were entitled to a writ of mandamus requiring the commissioners to refrain from further violation of the provisions of the deeds of gift and to replant, landscape and engage in erosion prevention in order to mitigate damage their improper actions had caused. Id. at 25-26.[1]
In 1974, the Legislature enacted St. 1974, c. 638, §1, thereby transferring management of the Reservation from the Commissioners to the Massachusetts Department of Natural Resources. The same year, the Legislature repealed Chapter 499 of the Acts of 1922 and transferred to DEM the Commissioners’ powers and duties with respect to the reservation. St. 1974, c. 806, §25.
In 1981, DEM sought to build a new bathhouse facility and to undertake a site-development project that included a system of paths and allied plantings and grading. Accordingly, DEM filed an Environmental Notification Form (“ENF”), a step required by the Massachusetts Environmental Policy Act (“MEPA”), G.L.c. 30, §§61 et seq. before any state agency undertakes a project that may adversely affect the environment. In the ENF, DEM stated that the proposed improvements would not adversely impact inland wetlands. The Secretary of the Executive Office of Environmental Affairs decided that no Environmental Impact Report was necessary and the project proceeded. See generally G.L.c. 30, §§62A-62C; 301 Code Mass. Regs. §§11.08, 11.09.
In 1984, DEM filed a Notice of Intent under the Massachusetts Wetlands Protection Act, G.L.c. 131, §40, in which it outlined its plan to demolish a concrete pier and two changing facilities, remove concrete decks and ramps along the edge of Walden Pond and replace the decks and ramps with fieldstone walls, native landscaping and seating areas. After considering the Notice, the Concord Natural Resources commission issued an Order of Conditions, approving the project subject to certain specifications.
In 1985, DEM filed another Notice of Intent under the Wetlands Protection Act, in which it described various erosion control measures it planned to take, including stabilization with rock and soil and planting of native species. In an attempt to prevent the trampling of vegetation caused by pedestrians straying off trails, DEK also proposed to establish pedestrian access points to the Pond’s edge and to improve the overall trail system. After considering the Notice, the Commission once again issued an Order of Conditions.
In 1985, DEM also filed an ENF with the Executive Office of Environmental Affairs. The ENF proposed various landscaping measures designed to reduce erosion, including the introduction of weathered rock, backfill consisting of gravel and soil and native plants. DEM stated that the project could result in the introduction of small quantities of soil, sand or gravel into the Pond but only while construction was taking place. The Secretary of Environmental Affairs again decided that no EIR was necessary and allowed DEM to proceed.
III. DISCUSSION A. STANDARD FOR SUMMARY JUDGMENT
Until recently, the principles governing summary judgment in Massachusetts were those the Supreme Judicial Court had articulated in Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Under those principles,
[t]he party moving for summary judgment assumes the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue, even if he [or she] would have no burden on an issue if the case were to go to trial. .. If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment. (Footnote omitted.)
In the recent case of Kourouvacilis v. General Motors Corp., 410 Mass. 706 (1991), however, the Court embraced the principles set forth by the Supreme Court of the United States in Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Under those principles,
a party who moves for summary judgment has the burden of initially showing that there is an absence of evidence to support the case of the nonmoving party shouldering the burden of proof at trial.[2] That burden is not sustained by the mere filing of the summary judgment motion or by the filing of a motion together with a statement that the other party has produced no evidence that would prove a particular necessary element of this case. The motion must be supported by one or more of the materials listed in rule 56(c) and, although that supporting material need not negate, that is, disprove, an essential element of the claim of the party on whom the burden of proof at trial will rest, it must demonstrate that proof of that element at trial is unlikely to be forthcoming.
*611 Kourouvacilis, supra, 410 Mass. at 714. As a consequence, there are now two ways in which the party moving for summary judgment may meet the burden imposed by Mass.R.Civ.P. 56. The first of those follows traditional Massachusetts law:
[T]he moving party may submit affirmative evidence that negates an essential element of the nonmoving party’s claim.
Kourouvacilis, supra, 410 Mass. at 715 quoting Celotex Corp. v. Catrett, supra, 477 U.S. at 331-32. (Brennan, J., dissenting). Second, however,
the moving party may demonstrate to the court that the nonmoving party’s evidence is insufficient to establish an essential element of the nonmoving party’s claim ... If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law . . . Plainly, a conclusory assertion that the non-moving party has no evidence is insufficient . . . Such a “burden” of reproduction is no burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment . . . Rather, ... a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record.
Id. Put another way,
a party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he [or she] demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case. To be successful, a moving party need not submit affirmative evidence to negate one or more elements of the other party’s claim.
Kourouvacilis, supra, 410 Mass. at 716. In applying that standard,
[w]here a moving party properly asserts that there is no genuine issue of material fact, “the judge must ask himself [or herself] not whether he [or she] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). A judge’s mere belief that the movant is more likely to prevail at trial is not a sufficient basis for granting summary judgment.
Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
Those, then, are the principles the Court must apply to the motions defendants have filed here.
B. THE MERITS 1. General
Before undertaking a precise analysis of the issues on which there are and are not genuine issues of material fact, several misconceptions require brief discussion. First, plaintiffs spend a great deal of time in their brief dealing with their contention that the deed of gift and subsequent statutes created a “public trust” and that, as a consequence, they may enforce the terms of that trust without the Attorney General’s intervention.
On that score, plaintiffs are wrong. In Nickols v. Commissioners of Middlesex County, 341 Mass. 13, 17-18 (1960), the Supreme Judicial Court recognized the existence of a trust but, at the same time, held that, apart from mandamus, the terms of the trust could not be enforced by the public without the Attorney General’s intervention.[3] Absent the Attorney General’s participation, the court simply has no broad equity jurisdiction to enforce the terms of the trust.
That limitation is important generally and is important here. Mandamus is a highly circumscribed remedy available only when no other remedy exists. E.g., County Commissioners of Middlesex County v. Sheriff of Middlesex County, 361 Mass. 89, 90-91 (1972). Moreover,
[i]t is not the function of a writ of mandamus to require public officers to make a particular decision on a matter within their discretion, . . . and [the courts] have no right to substitute [their] judgment for that of the official upon whom the Legislature has imposed the duty of making a decision.
Leigh v. Commissioner of Pub. Health & Charities of Lawrence, 310 Mass. 343, 344 (1941).
Here, [in many respects,] the petition does not seek to compel performance ... of any particular specified official act or acts . . . Rather it seeks to have this court institute a general investigation of . . . past official conduct ... to order . . . generally in the future . . . [full performance of] duties ... It is not the function of any court to exercise [such] inquisitorial powers . . . over . . . [administrators]. That is the function of another branch of the government.
Nichols v. Dacey, 329 Mass. 598, 600-01 (1953).
The importance of the foregoing limitations becomes important when one considers the second issue that must be placed to one side. In their brief, plaintiffs repeatedly characterize the Nickols decision as one in which the Supreme Judicial Court held that the “predominant obligation imposed by the deeds [of gift] was the preservation of the pond area as closely as practicable in its state of natural beauty.” Nickols v. Commissioners of Middlesex County, supra, 341 Mass. at 23. See Plaintiffs Brief at 7, 14, 20, 21, 27, 30, 33.[4] That, of course, looks like an unconditional obligation *612 of the type that frequently lends itself to enforcement by mandamus.
But to suggest that that is all the Supreme Judicial Court said in Nickols borders on the disingenuous. Immediately after the sentence on which plaintiffs rely, the Court went on at some length about other matters the trust involved. “Nevertheless,” the court said
we do not forget that the deeds authorized “bathing, boating, fishing, and picnicking." These words also must be given some significance and reconciled, so far as possible, with the donors’ dominant purpose. Although the principal concern of the donors was the preservation of the Walden of Emerson and Thoreau, they plainly did not intend Walden Pond to be only an outdoor museum, merely to be looked at by visitors. They expected it to be used for these subsidiary purposes to an extent consistent with achieving their major objectives. As we read the deeds, bathing, boating, fishing, and picnicking may be encouraged, and facilities for such uses, and for the comfort, safety, and convenience of bathers, fishermen, and other visitors, may be provided and improved, so long as the physical aspect, character, and appearance of the shores and woodland, as seen from the pond and its shores, are not essentially changed, and there is no interference with the dominant objective. This interpretation permits necessary maintenance, policing, removal of fallen trees, planting of new trees, repair of erosion and damage by visitors, and carefully planned and placed, well concealed, inconspicuous construction of essential structures. On the other hand, this interpretation requires that structures, roads, vehicles, and concessions shall not be placed on the shores and adjacent woodland area in a manner and to an extent inconsistent with the donors' primary purpose.
Nickols v. Commissioners of Middlesex County, supra, 341 Mass. at 23-24.
The balancing required by the Court’s interpretation of the deed necessarily involves exercise of discretion by those involved in maintenance of the Reservation, a fact recognized by the Court in Nickols itself:
Although the auditor finds that the commissioners in what they did “acted in good faith," their contentions in these cases show that they misunderstood the 1922 deeds and, accordingly, failed to give adequate attention to the donors’ dominant purpose. It is not to be assumed that, as public officers, they “will not apply proper principles, now that those principles have been indicated.”.. . Also, the extent to which it is feasible to take remedial action to remedy damage already done, and the manner in which such action and new work in the reservation should be undertaken, may involve some elements of official discretion and of county fiscal policy. Accordingly, the relief to be granted in the mandamus proceedings is general in terms ... In the mandamus proceedings, judgment is to be entered commanding the commissioners to refrain from further violation of the provisions of the deeds of gift as interpreted in this opinion and to take action, in orderly course, within the limits of appropriations available from time to time, by replanting, landscaping, and erosion prevention work to reduce the damage already caused to the pond area and adjacent woodlands.
Id. at 26-27. Accordingly, the defendants do, and must, have significant discretion in carrying out the manifold tasks necessary to maintain and operate the reservation in a manner consistent with the varied purposes set out in the deed of gift.
2. Sand Fill
With those principles in mind, plaintiffs have asserted one claim as to which there is indeed a genuine issue of material fact and as to which summary judgment cannot be granted. That claim has to do with defendants’ maintenance of the bathing beach. The gist and essence of plaintiffs’ claim is that the manner in which defendants have placed sand on the beach causes continual erosion of sand into the Pond. That erosion, plaintiffs claim, produces gullies in the beach. The gullies are filled with sand which thereafter erodes and produces more gullies. Plaintiffs claim that the process'repeats itself on a cyclical basis. The net effect of the erosion, plaintiffs conclude, is a gradual westward extension of the Pond’s eastern edge.
If plaintiffs’ allegations about what is happening to the sand on the bathing beach are correct, then defendants’ actions may amount to filling a wetland and various avenues for relief may be available. Under G.L.c. 214, §7A, for example, ten inhabitants of the Commonwealth may sue to restrain any “damage to the environment,” as that term is defined in the statute itself, resulting from “violation of a statute . . . the major purpose of which is to prevent or minimize damage to the environment.” Filling a wetland without filing a notice of intent to do so and obtaining necessary approvals is prohibited by G.L.c. 131, §40 as is filling without filing an ENF as required by G.L.c. 30, §§ 61 et seq. Both G.L.c. 131, §40 and G.L.c. 30, §§ 61 et seq. are statutes clearly designed to “prevent or minimize damage to the environment” and thus jurisdiction to enjoin any impermissible “filling” exists under G.L.c. 214, §7A. Depending on the factual circumstances, mandamus may also be available to force creation of some kind of a plan designed to prevent future “filling.”
As with most things, whether the defendants actions amount to a “filling” is a question of degree. A trial is required to determine what in fact is happening and then to determine whether what is happening amounts to an impermissible filling.
*613 3. Other Activities
Just as clearly, however, the other activities plaintiffs claim defendants are carrying out do not violate any statute and thus do not form a permissible basis for issuance of a writ of mandamus. Indeed, claims that defendants are failing to restore the Pond to its natural state, that they are stocking the Pond with non-native fish, that they are using pesticides on plants and insects and something called “retenone” in the water, that they are using non-native plants and that they are encouraging excessive tourism are manifestations of plaintiffs’ broad disagreement with the manner in which defendants are discharging the complex task of blending nature preservation with public use. See Plaintiffs' Brief at 7-8, 14-15. As stated, however, the task of striking the appropriate balance is a task for defendants, not for plaintiffs or for the court. Absent action by defendants that crosses a line drawn by applicable statutes, the manner in which defendants exercise their discretion to strike that balance cannot be challenged in an action for a writ of mandamus.
ORDER
In light of the foregoing, it is hereby ORDERED that defendants’ Motion for Summary Judgment should be and it hereby is ALLOWED except with respect to all allegations concerning erosion of beach sand and, as to those allegations, the motion is DENIED.

vAs a starting point for analysis of the Commissioners’ obligations, the Court quoted the following language from the deeds of gift: “[I]t being the sole and exclusive purpose of this conveyance to aid the Commonwealth in preserving the Walden of Emerson and Thoreau, its shores and nearby woodlands for the public who wish to enjoy the [pjond, the woods and nature, including bathing, boating, fishing and picnicking." Id. at 22 (emphasis added).

 Kourouvacilis did not change the proposition that the moving must show the absence of any genuine issue of material fact before the non-moving party will be required to file any affidavit-based response of any kind. Smith v. Massimiano, 414 Mass. 81, 85-86 (1993).

 Of course, members of the public may have standing to enforce the trust by proceeding in accordance with other specific statutes if and to the extent that violations of the trust also amount to violation of those statutes and those statutes confer standing on them.

 Plaintiffs have asked this court to take judicial notice of the Supreme Judicial Court’s decision in Nickols as well as of the content of Thoreau’s Walden. 1 have done so although the Nickols decision, being a matter of law, requires no noticing.